UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSHUA HUMPHREY,

                Petitioner,            Case No. 1:21-cv-1026

v.                                Honorable Jane M. Beckering

MICHAEL BURGESS,

                Respondent.

_____/

## OPINION

    This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Joshua Humphrey is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On June 8, 2017, following a five-day jury trial in the Muskegon County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I) in violation of MICH. COMP. LAWS § 750.520b, specifically subparagraph (1)(d). That subparagraph provides: "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [t]he actor is aided or abetted by 1 or more other persons and . . . [t]he actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless." MICH. COMP. LAWS § 750.520b(1). On June 28, 2017, the court sentenced Petitioner to concurrent prison terms of 28 to 51 years' imprisonment. The court departed upward by almost 10 years above the maximum minimum sentence under the sentencing guidelines.

    On December 6, 2021, Petitioner, who is represented by counsel in this action, filed his habeas corpus petition raising three grounds for relief, as follows:

I.     Where Mr. Humphrey's trial counsel failed to properly question witnesses, present evidence in defense, request appropriate jury instructions on a necessarily lesser included offense, and abandoned a viable defense, amongst other errors, [did] the Michigan Court of Appeals unreasonably apply established federal law?

II.    Where the admission of MRE 404(b) evidence against Mr. Humphrey was overwhelmingly prejudicial, and caused the jury to convict Mr. Humphrey regardless of the evidence presented regarding the charged counts presented at trial, was Mr. Humphrey deprived of due process of law because his trial was fundamentally unfair?

III.   Where the cumulative error deprived Mr. Humphrey of a fair trial, did the Michigan Court of Appeals unreasonably apply established federal law?

(Pet., ECF No. 1, PageID.9–10.) Respondent asserts that Petitioner's grounds for relief are meritless. (ECF No. 7.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

## I.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

Defendant's convictions result from the sexual assaults of KW and SL. The evidence at trial revealed that defendant and his codefendant Larry Stiff drugged the women with prescription medications and raped them in Stiff's basement. Consistent with defendant's convictions, the jury found Stiff guilty of two counts of CSC-1, MCL 750.520b(1)(d), for which the trial court sentenced Stiff to serve prison terms of 24 to 51 years for each conviction. This Court recently affirmed Stiff's convictions and sentences. See *People v Stiff*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2019 (Docket No. 340765).

At trial, KW testified that defendant contacted her online and that she agreed to meet him. After meeting him, defendant offered to take KW to get something to eat, but instead took her to a bar. KW testified that Stiff approached them at the bar; although SL did not meet defendant online, she befriended KW at the bar and began interacting with Stiff and defendant as a result. KW stated that she asked defendant on multiple occasions to bring her back to her car, but defendant insisted that she drink a shot of alcohol before he would do so. Ultimately, defendant ordered shots

and brought them back to KW and SL, who drank them. The victims recalled that, before drinking the shots, they had not consumed a sufficient amount of intoxicants to become inebriated. Both victims testified, however, that they suffered from nausea, loss of bodily control, and blackouts within a short time after drinking the shots provided by defendant.

The victims each recalled that Stiff and defendant transported them to a location later identified as Stiff's home and took them to the basement. Both women continued to suffer from blackouts and loss of bodily function in the basement. Without the women's consent, and while the women were still suffering from blackouts and unable to resist, defendant and Stiff vaginally and anally penetrated both women. The codefendants left the women on a mattress in the basement and, when KW and SL awoke, they were both missing their phones. After regaining some measure of control, the women left the home, although they reported still feeling sluggish the next day.

KW reported the assault to her mother the morning after it occurred and was examined by a sexual-assault nurse examiner, Robin Atwood, at a hospital; KW's mother reported the assault to the police. Atwood documented contusions or bruises on KW's knees, inner thighs, and ankle as well as injuries to KW's anus and vagina. She took DNA samples from KW's anus and vagina, as well as blood and urine samples. The DNA test returned results consistent with the DNA of both defendant and Stiff and the urine sample tested positive for gabapentin—a prescription muscle relaxant and anticonvulsant—and amitriptyline—an antidepressant. A forensic scientist testified that gabapentin can cause sleeping, faintness, lightheadedness and loss of control over bodily movements and that amitriptyline can cause an irregular heart rate, fainting, dizziness, and sleepiness. Dr. Michelle Glinn, a private forensic toxicologist with a Ph.D. in biochemistry, opined that these drugs could be used to facilitate "date rape," especially when combined with alcohol and that both drugs would be detectable in a victim's samples for 24 hours. Dr. Glinn testified that the drugs are commonly prescribed as pills and would have to be ground to be put into a drink.

Over the codefendant's objection, the prosecution presented other-acts testimony from five other victims. Although there were differences in the various details, the other-acts witnesses offered remarkably similar testimony. Several stated that they agreed to meet defendant through online contact. They each agreed to meet him in person and ended up at a bar. Most of the witnesses stated that Stiff appeared at the same location and interacted with Humphrey. All the women testified that defendant provided them with a drink at some point in the night; after having the drink, each woman suffered black outs, confusion, sickness, loss of bodily control, or similar symptoms within a short time. Most of the victims recalled going to another location, usually Stiff's basement, where they were sexually penetrated. One woman was not sexually assaulted because her friends intervened and brought her to their apartment; defendant and Stiff followed the women to the apartment and attempted to persuade the victim to leave the apartment, but were eventually forced to leave. A majority of the women testified that they or others were missing

valuables after the encounter. Each of the sexual-assault victims described feeling confused and violated by the assault, but most indicated that they did not contact the police department afterwards because they were ashamed, confused, or thought no one would believe them.

*People v. Humphrey*, No. 341198, 2019 WL 6888630, at *1–2 (Mich. Ct. App., Dec. 17, 2019).

The jury heard testimony over the course of four days from numerous individuals, including the victims, the mother of one of the victims, a Sexual Assault Nurse Examiner, various employees at the Michigan State Police forensics laboratory, and Dr. Glinn, an expert toxicologist retained by the prosecution. (Trial Tr. II, III, IV & V, ECF Nos. 8-8, 8-9, 8-10, 8-11.) After only an hour of deliberating, the jury reached a guilty verdict on June 8, 2017. (Trial Tr. VI, ECF No. 8-12, PageID.1094.) Petitioner appeared before the trial court for sentencing on June 28, 2017. (ECF No. 8-13.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences, raising numerous grounds for relief, including the three set forth above. Petitioner secured a remand to the trial court for a *Ginther*[1] hearing on his claim that counsel rendered ineffective assistance by failing to request a lesser-included-offense instruction. The court of appeals did not expand the remand beyond that issue, even though Petitioner raised several ineffective assistance of counsel claims and sought remand to elicit testimony regarding each such claim. The trial court conducted the *Ginther* hearing and subsequently denied Petitioner's motion for a new trial. (Muskegon Cnty. Cir. Ct. Op. & Order, ECF No. 1-2, PageID.65–80.) Thereafter, the court of appeals rejected all of Petitioner's appellate arguments and affirmed his convictions and sentences. *See Humphrey*, 2019 WL 6888630, at *1. The Michigan Supreme Court denied leave to appeal on September 8, 2020. (ECF No. 8-18, PageID.1863.) This § 2254 petition followed.

---

[1] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

4

## II.     AEDPA Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I—Ineffective Assistance of Counsel

#### 1.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might

7

be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

With respect to Petitioner's ineffective assistance claims, the court of appeals set forth the following standard of review:

> A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v. Sabin (On Second Remand)*, 242 Mich. App. 656, 659; 620 N.W.2d 19 (2000). To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v. Stanaway*, 446 Mich. 643, 687; 521 N.W.2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy."

> *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999). A trial strategy is sound if defense counsel develops the strategy in concert with an investigation that is adequately supported by reasonable professional judgment in light of the facts, circumstances, pleadings, and law, attending the case. See *People v. Grant*, 470 Mich. 477, 486–487; 684 N.W.2d 686 (2004). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v. Russell*, 297 Mich. App. 707, 716; 825 N.W.2d 623 (2012).

*Humphrey*, 2019 WL 6888630, at *3. Although the court of appeals cited state court authority for the standard, the standard applied is identical to *Strickland*. Moreover, if one looks to *Sabin*, the source of the standard is identified as *Strickland*. *See Sabin*, 620 N.W.2d at 22. The Court, therefore, will consider whether the state courts reasonably applied the standard for each of Petitioner's alleged instances of ineffective assistance of counsel.

Petitioner contends that counsel was ineffective for: (1) failing to properly question witnesses; (2) failing to present evidence in his defense; (3) failing to request a lesser-included offense jury instruction; and (4) abandoning a viable defense. In his § 2254 petition, Petitioner provides more context for his claims, stating that this Court should consider:

> Counsel's failure to make a discovery request under MCR 6.201, to file a Motion for Discovery, and to investigate favorable video surveillance; Counsel's failure to properly advise [Petitioner] regarding his Constitutional right to testify on his own behalf; Counsel's failure to call defense witnesses (members of [Petitioner's] immediate family) who could have testified favorably for [Petitioner]; and, Counsel's failure to request that the jury be instructed on Criminal Sexual Conduct, Third Degree, a necessarily lesser included offense of the charged offenses.

(ECF No. 1, PageID.33.) Petitioner contends that the failure to request discovery hindered his ability to present his own expert to rebut the opinions of Dr. Glinn, the State's expert toxicologist. (*Id.*, PageID.34.) He also asserts that counsel failed to adequately cross-examine witnesses, including Dr. Glinn and one of the victims. (*Id.*, PageID.44.) The majority of Petitioner's argument, however, is dedicated to counsel's failure to request a lesser-included offense instruction. The Court considers each argument in turn below.

9

## 2.      Failure to Obtain Discovery and Investigate Video Surveillance

The court of appeals considered Petitioner's arguments regarding counsel's failure to obtain discovery and investigate video surveillance under a general "trial preparation" category and rejected Petitioner's claims, stating:

> *Trial Preparation*. Defendant argues that his trial counsel failed to properly investigate the case and conduct discovery. Specifically, defendant maintains that defense counsel should have investigated favorable video evidence and should have requested an offer of proof with regard to Dr. Glinn's proposed testimony. With regard to the video evidence, a police report allegedly indicated that an officer reviewed a video from the bar, which showed defendant purchasing drinks from the bartender and giving one to KW. Defendant's appellate counsel argues that the video would show that he did not put anything in KW's drink. Appellate counsel, however, was unable to locate the video to personally review it for appeal. Moreover, defendant's appellate counsel did not submit the police report or an affidavit from the officer. Accordingly, we are unable to conclude that the video was available to defense counsel during discovery. Moreover, because the video is not available for review, we are unable to conclude that the video would have impacted defendant's defense.[2] Accordingly, this claim of ineffective assistance is without merit.
>
> With regard to Dr. Glinn's testimony, defendant has not presented any proposed expert that would undermine Dr. Glinn's testimony or identified any aspect of Dr. Glinn's testimony that defense counsel could have impeached with better preparation. Moreover, at the hearing on defendant's motion for a new trial, appellate counsel could not state how things might have been different had trial counsel been better prepared. Therefore, this claim is also without merit.

---

[2] Given the strength of the victims' testimonies and the other-acts evidence, we note that it is unlikely that evidence from the video would have aided defendant's defense. The evidence presented at trial compellingly showed that defendant acted in concert with Stiff on multiple occasions to drug and rape women and there appears to be no deviation from that common plan in the instant case.

*Humphrey*, 2019 WL 6888630, at *4 & n.2.

With respect to the claim that counsel failed to investigate favorable video evidence, Petitioner's § 2254 petition is devoid of any facts or arguments to support this assertion. Petitioner's failure to present any argument regarding this issue renders it abandoned. *See Sommer*

10

*v. Davis*, 317 F.3d 686, 691 (6th Cir. 2013). In any event, Petitioner has not presented any evidence to suggest that trial counsel was even aware of the existence of favorable video evidence. Likewise, Petitioner's claim that this video would have been favorable is based solely on his speculation that it would have shown that he did not put anything in KW's drink. Petitioner has simply failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to investigate favorable video evidence is contrary to, or an unreasonable application of, clearly established federal law.

With respect to Dr. Glinn, Petitioner contends that counsel "did not do so much as request a summary of the proposed expert testimony, much less taken on affirmative steps to rebut the People's expert on a central issue in the case, i.e., whether the drugs found in the complainants' systems could have caused the alleged symptoms each described." (ECF No. 1, PageID.43.) Petitioner also argues that this expert testimony "also bore on the notion of whether [Petitioner] would have been aware that each complainant was suffering from an incapacity." (*Id.*)

"Decisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Counsel's decisions regarding how to cross-examine a witness are matters of trial strategy, which are entitled to "great respect" by this Court. *See Glenn v. Sowders*, No. 85-5754, 1986 WL 18475, at *4 (6th Cir. Dec. 8, 1986); *see also Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). While there may be room

for improvement in cross-examination, were that to be "the standard of constitutional effectiveness, few would be the counsel whose performance [pass] muster." *Henderson*, 118 F.3d at 1287 (quoting *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)). Moreover, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.*

Petitioner simply fails to explain how obtaining a summary of Dr. Glinn's proposed testimony would have allowed counsel to cross-examine Dr. Glinn more adequately. During the hearing regarding Petitioner's motion for a new trial and resentencing, Petitioner's first appellate attorney argued that trial counsel could have elicited testimony that "other things could account for the presence of amitriptyline or gabapentin" in the victims' systems, and that there could be "other explanations for the kinds of muscle weakness and memory loss" experienced by the victims. (Mot. Hr'g Tr., ECF No. 8-15, PageID.1195–1196.) Counsel, however, admitted that Dr. Glinn was not a surprise witness. (*Id.*, PageID.1196.) Moreover, Petitioner fails to explain how such evidence would have had any effect on the outcome of his trial. Likewise, Petitioner has failed to demonstrate that counsel was ineffective for not presenting an expert witness because "he has failed to present any testimony to establish that an expert witness could have been obtained to testify favorably for him." *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002). Petitioner has simply failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's approach to Dr. Glinn's testimony is contrary to, or an unreasonable application of, clearly established federal law.

### 3.      Other Witnesses

Petitioner faults trial counsel for not presenting witnesses, namely Petitioner's immediate family members, who could have testified favorably for him. (ECF No. 1, PageID.33.) The court of appeals rejected this claim, stating:

> *Other Witnesses*. Defendant also argues that defense counsel should have called some of his immediate family and prior sexual partners to testify on his behalf. Defendant, however, did not offer an affidavit or other proof of the proposed testimony. Accordingly, defendant has failed to show that these witnesses would have, in fact, testified at trial and that their testimony would have been helpful to his defense. Thus, this claim is without merit.

*Humphrey*, 2019 WL 6888630, at *4.

Petitioner merely reiterates the argument presented in the court of appeals to support his claim. His vague and speculative claim does not entitle him to habeas relief because he has "failed to identify these witnesses, indicate their availability, or specify the content of their testimony." *See Dell*, 194 F. Supp. 2d at 650; *see also Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007) (rejecting an ineffective assistance claim for the petitioner's failure to provide a "basis on which to conclude that failure to call a possibly favorable witness amounts to constitutionally deficient performance"); *cf. Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (rejecting a conclusory ineffective assistance of appellate counsel claim because the petitioner provided no factual support for the claim). Petitioner has simply failed to show that the court of appeals' rejection of his ineffective assistance claim regarding trial counsel's failure to call other witnesses is contrary to, or an unreasonable application of, *Strickland*.

### 4.      Advice Regarding Petitioner's Right to Testify

Petitioner also faults trial counsel for failing to properly advise him regarding his right to testify on his own behalf. (ECF No. 1, PageID.33.) The court of appeals rejected this argument, stating:

*Right to Testify*. Next, defendant claims that defense counsel failed to properly advise him of his constitutional right to testify on his own behalf and improperly persuaded him to abstain from testifying. The record does not support this assertion. At trial, defendant intended to testify and the trial court created a record to ensure that his decision to testify was knowingly and intelligently made. When making the record, defendant agreed that his trial counsel had had numerous discussions with him about his case. He likewise agreed that defense counsel had explained the pros and cons of testifying. And when asked whether it was his "free choice" to testify, he responded, "Yes." He also agreed that defense counsel was not forcing him to testify or forcing him not to testify. The trial court then advised defendant about the implications of his decision to testify. Defendant agreed that defense counsel warned him that his criminal record could be used against him should he choose to testify. He also agreed that he understood that, if he testified, he could be cross-examined about things he may have told officers—including things he may have stated during his polygraph. He also stated that he understood that the prosecutor might be able to call rebuttal witnesses to rebut anything he stated on the stand. Finally, he agreed that he knew that his testimony could be used against him in another pending case. The court then went off the record for more than 20 minutes while defendant again conferred with defense counsel. Defendant then stated on the record that it was his decision not to testify. On this record, we cannot conclude that defendant's decision not to testify was coerced or uninformed in any way.

*Humphrey*, 2019 WL 6888630, at *4.

In a criminal trial, the protections afforded under the Constitution for "due process of law" provide that "no one shall be condemned in his person . . . without an opportunity of being heard in his own defense." *Holden v. Hardy*, 169 U.S. 366, 390–91 (1898). A criminal defendant's right to testify on his own behalf "is a fundamental right." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53 & n.10 (1987)). The right can be waived by a defendant only if done so knowingly and intelligently. *Stover*, 474 F.3d at 908 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973)) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial."). The Supreme Court has determined that some waivers of fundamental rights are required to be taken on the record. However, while it remains advisable, "the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intelligently waived

the right to testify, nor ensure that the defendant has waived the right on the record." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). To retain the right, "a defendant must 'alert the trial court' that he desires to testify" or that a disagreement with defense counsel exists. *Webber*, 208 F.3d at 551 (quoting *Pelzer v. United States*, No. 96-1195, 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997)).

The court of appeals' determination turned principally on the resolution of factual issues, not legal issues. As noted *supra*, a determination of a factual issue made a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner*, 449 U.S. at 546–47 (1981); *Smith*, 888 F.2d at 407 n.4. Petitioner does not offer any new evidence to rebut the court of appeals' findings. Rather, Petitioner asks this Court to look at the same evidence relied upon by the court of appeals and discredit the testimony he gave during the *voir dire* conducted by the trial court regarding his right to testify. That is not the nature of federal habeas review. Furthermore, the record is notably devoid of any offer of proof outlining Petitioner's purported testimony. Thus, there is nothing in the record to support a claim that Petitioner's failure to testify resulted in any prejudice to him. Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to adequately advise him regarding his right to testify is contrary to, or an unreasonable application of, *Strickland*.[2]

---

[2] In his statement of his grounds for relief, Petitioner faults counsel for "abandon[ing] a viable defense." (ECF No. 1, PageID.9.) As part of his argument regarding the admission of Rule 404(b) evidence, Petitioner argues that his defense was that the "encounters with [the victims] were consensual and that he had no knowledge that either woman was so incapacitated as to lack the ability to consent to sexual intercourse." (*Id.*, PageID.51.) Without Petitioner's testimony, there

### 5.   Cross-Examination of Witnesses

Petitioner next faults counsel for not adequately cross-examining KW. (ECF No. 1, PageID.44.) He contends that counsel should have impeached KW about: (1) her "missing" shirt, which was in fact in evidence; (2) her wish to meet up with her ex-boyfriend after seeing Petitioner; and (3) her inconsistent statements to police about the incident. (*Id.*)

The court of appeals rejected Petitioner's assertion, stating:

> *Cross-Examination*. Defendant argues that defense counsel should have done a better job of cross-examining KW, particularly with respect to KW's allegedly inconsistent statements to police officers, her purportedly missing shirt, and desire to meet her ex-boyfriend. With regard to the last piece of evidence, KW's desire to meet her ex-boyfriend is completely irrelevant to the matter at issue. There is no indication in the record anywhere that KW's ex-boyfriend played any role in the assaults. Similarly, with regard to the purportedly missing shirt, whether KW's shirt was actually missing or whether she forgot to grab it when she left the morning after the assault was of little importance to the issues of consequence, i.e., whether defendant worked with Stiff to drug and rape KW and SL. Finally, with respect to the allegedly inconsistent statements to police officers, the record shows that KW included several details in her statements to officers that were more incriminating than the testimony she provided at trial. Defense counsel may, therefore, have refrained from cross-examining KW about details that might have invited more damaging testimony. Whether and how to cross-examine a witness are generally matters of trial strategy, *Rockey*, 237 Mich. App. at 76, and this Court will not second guess trial counsel on matters of trial strategy, *Russell*, 297 Mich. App. at 716. This claim is therefore without merit.

*Humphrey*, 2019 WL 6888630, at *5. To prevail, Petitioner must demonstrate that counsel's strategy deprived him of a substantial defense. *See Collins*, 2011 WL 4346333, at *16. For the reasons given by the court of appeals, the record does not support that claim, and counsel's decisions regarding how to cross-examine KW are entitled to "great respect" by this Court. *See Glenn*, 1986 WL 18475, at *4. Petitioner has simply failed to demonstrate that the court of appeals'

---

was no basis for counsel to move forward with a "consent" defense. Accordingly, Petitioner cannot demonstrate that counsel was ineffective for failing to present such a defense.

rejection of his ineffective assistance claim premised upon counsel's failure to cross-examine KW regarding these matters is contrary to, or an unreasonable application of, *Strickland*.

### 6.      Failure to Request Lesser-Included Offense Jury Instruction

Most of Petitioner's argument regarding counsel's alleged ineffectiveness is devoted to his argument that counsel failed to request that the jury be instructed on the lesser offense of third-degree criminal sexual conduct. As noted above, Petitioner was convicted of two counts of CSC-I in violation of subparagraph (1)(2) of MICH. COMP. LAWS § 750.520b. That subparagraph provides: "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [t]he actor is aided or abetted by 1 or more other persons and . . . [t]he actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless." MICH. COMP. LAWS § 750.520b(1). Petitioner believes counsel should have sought a lesser included instruction for CSC-III in violation of MICH. COMP. LAWS § 750.520d(1)(c), which provides that a person is guilty of CSC-III if "the person engages in sexual penetration with another person and . . . [t]he actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless." *See* MICH. COMP. LAWS § 750.520d(1)(c).

Petitioner contends that there was no strategic purpose for failing to request such an instruction because the "evidence of aiding and abetting was scant on the record." (ECF No. 1, PageID.34.) Petitioner argues that the "only factual and legal distinction between Criminal Sexual Conduct, First Degree (Life offense) and Criminal Sexual Conduct, Third Degree (15-year offense), was aiding and abetting," and that there was little evidence to support the prosecution's theory that Stiff aided and abetted Petitioner's commission of the crimes for which he was convicted. (*Id.*, PageID.35.) Petitioner asserts that there was evidence only that Stiff was present,

and that neither victim provided "positive proof" that he aided and abetted Petitioner. (*Id.*, PageID.36.)

The court of appeals rejected Petitioner's argument, stating:

*Lesser-Included Offense Instruction*. Next, in his supplemental brief on appeal, defendant claims that the trial court erred when it determined that trial counsel's failure to request that the jury be instructed on the necessarily included lesser offense of third-degree criminal sexual conduct did not amount to ineffective assistance of counsel. Specifically, he maintains that defense counsel's testimony that she decided to pursue an all-or-nothing strategy was clearly incredible and belied by evidence that she did not discuss the defense with defendant and did not pursue it in her closing argument.

Contrary to defendant's contention on appeal, the trial court found trial counsel's decision not to request the instruction was because defendant did not want the instruction to be presented to the jury. The trial court noted that defendant was not interested in a "negotiated settlement" and recognized that, if the evidence did not support that defendant was aided by Stiff in the assault, the jury would have had to acquit defendant completely. It also recognized that reasonable attorneys could have disagreed about whether to pursue such a defense and avoid the possibility of a compromise verdict. The court noted that defense counsel did not specifically discuss lesser-included offenses with defendant, but nevertheless found that defense counsel would not have been authorized to seek an instruction on the lesser charge because defendant was aware of the possibility for a lesser offense and disclaimed any interest in it. Because the record supports the trial court's findings, we conclude that defendant's final claim of ineffective assistance is without merit.

*Humphrey*, 2019 WL 6888630, at *5.

Given the double deference owed, it is not for the Court to decide whether counsel's strategy was reasonable. Rather, this Court must determine "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Thus, this Court is considering the court of appeals' assessment of trial counsel's action, not counsel's action itself.[3]

---

[3] Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy and, therefore, can only prevail if he shows that the challenged action **cannot** be considered sound trial strategy. Thus, as the *Harrington* Court noted, "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not

In *Keeble v. United States*, 412 U.S. 205 (1973), the Supreme Court explored the possible outcomes that might follow from giving—or failing to give—a lesser-included offense instruction. The *Keeble* Court acknowledged the potential benefit that Petitioner claims was denied to him at trial:

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

*Keeble*, 412 U.S. at 212–13; *see also Beck v. Alabama*, 447 U.S. 625, 634 (1980) (noting that "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard").

During the *Ginther* hearing, Petitioner testified that he first learned of the potential for a CSC-III charge from "several guys that were incarcerated with [him] that had that charge." (*Ginther* Hr'g Tr. I, ECF No. 8-14, PageID.1151.) These individuals told Petitioner that if he went to trial, he could be convicted of a lesser offense. (*Id.*) When Plaintiff met with trial counsel, he asked about the possibility of a lesser offense. (*Id.*, PageID.1152.) According to Petitioner, trial

---

counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. If the Michigan Court of Appeals conceived of a sound strategy that includes the challenged action, the matter is resolved.

counsel told him that it would be up to the judge "to decide if he wanted to put that on the verdict form." (*Id.*) Petitioner testified that trial counsel never told him that he "could ask for it or anything [him]self." (*Id.*) Petitioner testified that he asked trial counsel about the possibility of a CSC-III instruction on the first day of trial, right before trial began, and that she again said it "would be up to the judge at the end of trial." (*Id.*, PageID.1158–1159.) Petitioner noted that at the end of testimony, the judge "asked the prosecutor if there [were] any lesser included offenses, and then it sounded like [the judge] might have asked [trial counsel] the same question." (*Id.*, PageID.1159.) Petitioner asked counsel what happened regarding the lesser included offense, and testified that trial counsel told him "evidently the judge doesn't want to put it on that form. That's his decision." (*Id.*) Petitioner testified, however, that the judge's questioning regarding lesser included offenses was done on the record. (*Id.*, PageID.1160.)

Petitioner testified further that if he had known that "the jury then would have a choice between not just all or nothing, but also have this verdict that was less serious than the one," he would have asked or directed trial counsel "to ask the Court to instruct the jury about this lesser included." (*Id.*, PageID.1161.) Petitioner explained his reasoning for his answer, stating that he "never denied that [he] didn't have sex with these women." (*Id.*) He explained that "this was never a team thing" between himself and Stiff. (*Id.*)

On cross-examination, Petitioner admitted that he was present in the courtroom when the judge "noted for the record that there were no lesser included instructions requested." (*Ginther Hr'g Tr. II*, ECF No. 8-16, PageID.1231.) Petitioner testified that he told his first appellate attorney that he had asked trial counsel for a lesser included instruction. (*Id.*) He told his first appellate attorney about the conversation he had with trial counsel and that trial counsel told him that the judge makes the decision regarding the lesser included instruction. (*Id.*, PageID.1231.)

Trial counsel also testified during the *Ginther* hearing. She testified that she did not recall talking to Petitioner about asking for a lesser included instruction. (*Id.*, PageID.1239.) Trial counsel noted that towards the beginning of the case, she explained "the different CSC's" to Petitioner and explained the elements of each. (*Id.*) That was the only time she discussed "any of the CSC's" with Petitioner. (*Id.*, PageID.1240.)

After Petitioner's sentencing, trial counsel had a conversation with Petitioner's first appellate counsel. (*Id.*, PageID.1243.) Trial counsel testified that she did not recall the conversation, but that she "talked about the case and [she] tried giving [appellate counsel] some ideas of issues [she] saw or things that had happened during the case that's not necessarily in the transcript." (*Id.*) Trial counsel did not recall having more than one conversation with Petitioner's first appellate counsel about Petitioner's case. (*Id.*, PageID.1248.)

On cross-examination, trial counsel testified that she did not recall telling Petitioner that "the only difference between CSC 1 and CSC 3 in, with the fact pattern in his case, was the aiding and abetting element." (*Id.*, PageID.1249.) Counsel testified that she knew that Petitioner "had had discussions with fellow inmates," but that he never said anything about having a conversation about the possibility of a lesser included offense and "that the only element difference was aiding and abetting." (*Id.*, PageID.1249–1250.)

The trial court asked trial counsel if Petitioner "tug[ged] on [her] elbow at all or [wrote her] a note or say, 'Wait a minute, we talked about this or I want to talk to you about this,' or anything like that" when, during trial, the court discussed the possibility of a lesser included offense on the record. (*Id.*, PageID.1250–1251.) Trial counsel responded that Petitioner did not do anything like that. (*Id.*, PageID.1251.) The court also asked if prior to trial, Petitioner authorized counsel to "negotiate a resolution to this case." (*Id.*) Trial counsel responded, "Never. That was

one of the things that it was basically an all or nothing. He did not want me to do any plea negotiations. I don't think we've ever did a Cobb's agreement, even. There was absolutely no negotiation, no—no agreement to try and work anything out." (*Id.*)

On redirect, trial counsel testified that the prosecution never offered a plea deal to CSC-III in exchange for dismissing the CSC-I charges. (*Id.*, PageID.1252.) She testified that if she had asked for a lesser included jury instruction, "it would have been brought out here and put on the force, put on the record." (*Id.*, PageID.1253.)

On recross, trial counsel testified that it was "correct" that she "looked at this as an all or nothing situation." (*Id.*, PageID.1255.) Trial counsel testified that "was [her] strategy and that's what [Petitioner] basically wanted. He didn't want a chance for anything lesser. It was this isn't me, I didn't—I did part of it, but I didn't do all of it. I should not be convicted of anything." (*Id.*, PageID.1255–1256.) Trial counsel testified that she did not believe the judge would have actually given a lesser included instruction because trial counsel thought Stiff's "involvement was pretty much a foregone conclusion." (*Id.*, PageID.1256.)

Trial counsel noted that she had many conversations with Petitioner, "especially with the number of 404b witnesses that were coming in." (*Id.*, PageID.1257.) She testified that Petitioner's "primary thing was if something had happened he didn't know about it. It was a consensual act with all of them, that they were just wanting to get back at him, revenge type thing." (*Id.*) Trial counsel testified that Petitioner "was extremely consistent" and that from the beginning, his conversations essentially conveyed an "all or nothing" approach. (*Id.*) Trial counsel clarified that she did not have a specific conversation with Petitioner "about this was going to be all or nothing." (*Id.*, PageID.1258.) Rather, that was a "cumulative of the many conversations that [they] had from the beginning of the case that he wasn't accepting anything. Wasn't accepting any—me to work

any plea deals or negotiations or anything like that, just continue throughout. So that became the theory of the case, basically." (*Id.*)

Petitioner's first appellate counsel also testified during the *Ginther* hearing. She testified that she had at least one conversation with trial counsel about Petitioner's case. (*Id.*, PageID.1264.) Appellate counsel admitted that she did not have any contemporary notes from her conversation with trial counsel. (*Id.*, PageID.1265.) Appellate counsel testified that she asked trial counsel "about the reason why she did not ask for a lesser included offense of CSC 3." (*Id.*, PageID.1270.) According to appellate counsel, trial counsel could not recall "whether or why she did not ask for" it. (*Id.*) Appellate counsel testified that during the oral argument regarding Petitioner's motion for a new trial, she told the judge that she had spoken to trial counsel about the issue and that the gist of trial counsel's response was that she did not know why she had not sought a lesser included. (*Id.*, PageID.1271–1272.)

Appellate counsel conceded that "a strategy that might be good in one case might be terrible in another case." (*Id.*, PageID.1285.) When asked if it was "not necessarily bad strategy for [trial counsel] to go with an all or nothing presentation," appellate counsel responded that she did not recall discussing trial counsel's strategy with her because after trial counsel "said she didn't know, there wasn't much to talk about as far as strategy is concerned." (*Id.*, PageID.1286–1287.) Appellate counsel conceded, however, that when she talked to trial counsel, Petitioner's file likely was not before trial counsel and that trial counsel was not "necessarily focused" on Petitioner's case at that time. (*Id.*, PageID.1287.) Appellate counsel also conceded that if the jury believed that Stiff was not Petitioner's accomplice, Petitioner would have been completely acquitted because CSC-I was the only charge presented to the jurors. (*Id.*, PageID.1286.)

Petitioner contends that on the facts presented at the *Ginther* hearing, "there is no strategic purpose for failing to request a necessarily lesser included jury instruction" for CSC-III. (ECF No. 1, PageID.38.) Petitioner contends that trial counsel's testimony was not credible "in refuting [Petitioner's] repeated assertions that *he* raised the issue of requesting a lesser included instruction repeatedly, that she told him each time that it was up to the trial court, not trial counsel, whether such an instruction would be included, that she never told him that he could make such a request." (*Id.*) Ultimately, Petitioner argues that trial counsel "has no explanation for her failure to request such an instruction, much less a 'strategic' one." (*Id.*, PageID.39.)

Petitioner essentially requests that this Court credit his testimony, and the testimony given by appellate counsel, over that given by trial counsel at the *Ginther* hearing. In its opinion denying Petitioner's motion for a new trial, the trial court noted that in evaluating witness credibility, it "generally placed more emphasis on testimony given in court, with its opportunity for cross examination, than prior testimony submitted through affidavits, or through another witness's version about what the witness said." (ECF No. 1-2, PageID.66.) The trial court admitted that "[e]vauluating [trial counsel's] testimony [was] challenging," and that it "was lacking in [some] respects." (*Id.*, PageID.72.) The trial court noted that Petitioner "was a confident and sophisticated client" who "consistently . . . disclaimed any interest in a settlement." (*Id.*, PageID.73.) Ultimately, though, by finding that counsel's performance was not deficient under *Strickland*, the trial court resolved any credibility contests in favor of trial counsel. The court of appeals presumably adopted this determination by affirming the trial court's decision.

Even though trial counsel's testimony during the *Ginther* hearing was, at times, lacking, "given that this Court did not have the benefit of observing the demeanor of these witnesses, it, as it must on habeas review, defer[] to the [state] court's credibility determination." *See Poindexter*

*v. Booker*, No. 05-CV-71607, 2007 WL 1556671, at *13 (E.D. Mich. May 30, 2007). Upon review of the testimony provided at the *Ginther* hearing, this Court cannot conclude that the court of appeals' assessment of trial counsel's conduct was unreasonable. Trial counsel maintained that throughout trial preparation, Petitioner maintained that he had consensual sex with the victims and that if anything further had happened to them, he had nothing to do with it. Given this assertion, it was reasonable for counsel to conclude that Petitioner was not interested in pursuing a lesser included offense, especially if Petitioner believed that the victims were not incapacitated and had the ability to consent.

Even though Petitioner maintains that the decision to not pursue a lesser included instruction on CSC-III essentially meant that the jury was not provided "with an alternative to a life offense," even if the differences between sentences for CSC-I and CSC-III were extreme, the Sixth Circuit has concluded that an "all or nothing" strategy can fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In *Kelly v. Lazaroff*, 846 F.3d 819 (6th Cir. 2017), the Sixth Circuit conducted a *de novo* review of the objective reasonableness of counsel's "all or nothing" decision to assess whether appellate counsel should have raised the issue. The Sixth Circuit concluded that counsel's decision to pursue a "'high risk, high reward' . . . 'all or nothing' defense . . . did not fall below the bar of professionally competent assistance." *Kelly*, 846 F.3d at 830; *see also Harrop v. Sheets*, 430 F. App'x 500, 507 (6th Cir. 2011) (discussing that counsel could have reasonably decided not to request a lesser offense instruction because such an instruction "would have diluted the other arguments [counsel] was advancing to the jury"). The same conclusion is warranted here. Petitioner has failed to show that the state courts' conclusions regarding counsel's failure to request a lesser included instruction regarding CSC-III is contrary to, or an unreasonable application of, *Strickland*.

In sum, although Petitioner raises several claims of ineffective assistance of counsel, he has failed to show that the state courts' rejections of those claims were contrary to, or unreasonable applications of, *Strickland*. Petitioner, therefore, is not entitled to relief on habeas ground I.

## B.     Ground II—Admission of 404(b) Evidence

In habeas ground II, Petitioner contends that he was denied due process because the trial court improperly admitted evidence of other acts pursuant to Michigan Rule of Evidence 404(b), as set forth above in the court of appeals' opinion. (ECF No. 1, PageID.45.) Petitioner argues the testimony from other women who had encountered Petitioner and Stiff should not have been admitted because his defense was that the "encounters with [the victims] were consensual and that he had no knowledge that either woman was so incapacitated as to lack the ability to consent to sexual intercourse." (*Id.*, PageID.51.) According to Petitioner, "the evidence of the other similar assaults was not relevant to any other material issue besides attempting to demean [his] character, which is disallowed under the rule." (*Id.*)

The court of appeals rejected Petitioner's argument, stating in relevant part:

Defendant argues that the prosecution failed to establish that the other-acts testimony presented at his trial had any relevance for a purpose other than to prove propensity. We disagree. This Court would be hard-pressed to find a better example of the appropriate use of other-acts evidence.

Regarding the first criteria, the prosecution charged defendant with two counts of CSC-I involving an accomplice. MCL 750.520b(1)(d). Defendant admitted to sexually penetrating the victims; therefore, to convict defendant of these charges, the prosecution had to prove, *inter alia*, that defendant had reason to know that the victims were "mentally incapacitated, or physically helpless" when he sexually penetrated them and that Stiff aided the assault.[] See MCL 750.520b(1)(d)(*i*). The other-acts evidence logically showed that Stiff and defendant engaged in a common scheme or plan under which defendant would befriend women online and bring them to a bar where Stiff would meet defendant. Defendant would then provide the women with alcohol which he or Stiff had spiked with prescription medicine to cause the women to black out and/or lose control of their bodies. The codefendants would then transport the women to another location, usually Stiff's basement, where they would rape the women and steal from them.

As to relevance, the testimony from each of the other-acts victims was eerily similar to testimony of the victims in this case and supported strong inferences that defendant had actual knowledge that KW and SL were "mentally incapacitated, or physically helpless" at the time of the sexual penetration and that Stiff aided defendant in the assault. Defendant's claim of consent placed both of these elements at issue and the immediate victim's inability to recall many details of the offenses—given their forced incapacitation—rendered the other-acts evidence highly probative on these contested issues.

Finally, regarding undue prejudice, we note that the testimony did not involve a situation in which there was a danger that marginally probative evidence would be given undue weight. See *People v. Mills*, 450 Mich. 61, 75-76; 537 N.W.2d 909 (1995). Again, the other-acts testimony was highly probative on several contested issues, namely whether defendant knew that the victims were physically or mentally incapacitated and whether Stiff aided the assaults. The other-acts evidence created strong inferences that defendant personally drugged the women or knew that Stiff was drugging the women and that the codefendants worked in concert to sexually assault multiple victims. Indeed, the strong similarities between the other acts and the conduct at issue lessened the danger that the jury would use the evidence for any purpose other than evaluating whether defendant and Stiff engaged in a common scheme to sexually assault women. Moreover, the trial court mitigated the danger that the jury would use the other-acts testimony for an improper purpose by instructing the jury that it could only use the evidence for specific nonpropensity purposes. See *People v. Roper*, 286 Mich. App. 77, 106; 777 N.W.2d 483 (2009). The evidence was certainly prejudicial to defendant, but it was not unduly prejudicial.

In sum, the other-acts evidence was offered for a proper nonpropensity purpose, was relevant to contested issues at trial, and was not unduly prejudicial. The proper admission of relevant evidence does not violate defendant's right to due process. See *Estelle v. McGuire*, 502 U.S. 62, 70; 112 S. Ct. 475; 116 L. Ed. 2d 385 (1991). Therefore, defendant's argument that the trial court abused its discretion by admitting the evidence is wholly without merit.

*Humphrey*, 2019 WL 6888630, at *2–3 (footnote omitted).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000). Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner "urges this Court to apply the *Chambers* [*v. Mississippi*, 410 U.S. 284 (1973),] standard as applied in the more recent [Sixth Circuit] ruling in *Ege* [*v. Yukins*, 485 F.3d 364 (6th Cir. 2003)]." (ECF No. 1, PageID.49.) In *Chambers*, the Supreme Court concluded that the exclusion of evidence that another individual had repeatedly confessed to shooting the victim

28

on four separate occasions denied Chambers "a trial in accord with traditional and fundamental standards of due process." *Chambers*, 410 U.S. at 302. In *Ege*, the Sixth Circuit concluded that the state court unreasonably applied *Chambers* to determine that an expert witness's testimony that the defendant was the only person in the Detroit metropolitan area that could have left a bite mark on the victim's cheek was admissible, concluding that such a statement was "without doubt highly prejudicial." *Ege*, 485 F.3d at 376.

To the extent Petitioner suggest that the court of appeals' decision is an unreasonable application of *Ege*, his reliance on that decision is misplaced because it is a Sixth Circuit decision, not a Supreme Court case. Moreover, Petitioner's reliance on *Chambers* is also misplaced. The Supreme Court must have confronted "the specific question presented by this case; it is not enough that a case be only "similar" to a Supreme Court case. *See Woods v. Donald*, 575 U.S. 312, 317–18 (2015) (per curiam). Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the testimony at issue, regardless of whether it was covered by Rule 404(b). *See Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (discussing that even if the trial court violated Michigan Rule of Evidence 404(b), such "'garden-variety' character-evidence error does not 'cross the constitutional threshold' of due process"). Petitioner has not met this high standard and, therefore, is not entitled to habeas relief on this ground.

### C.      Ground III—Cumulative Error

As his final ground for relief, Petitioner contends that the cumulative weight of error that occurred deprived him of a fair trial in violation of his due process rights. (ECF No. 1, PageID.55.) Petitioner argues that the "plethora of prejudicial errors committed by [his] trial counsel and the trial court," as described above, warrant a new trial. (*Id.*, PageID.57.) The court of appeals summarily dismissed this claim, noting that "Defendant . . . has not identified any actual errors on appeal." *See Humphrey*, 2019 WL 68886309, at *7.

Under the AEDPA, a court may only grant habeas relief based on a misapplication of Supreme Court law. *See Bailey*, 271 F.3d at 655. The Sixth Circuit has repeatedly stated that cumulative error claims are not cognizable on habeas review. *See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *see also Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004); *Millender v. Adams,* 376 F.3d 520, 529 (6th Cir. 2004); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Moreover, because the individual claims are without merit, Petitioner cannot show that the cumulative error violated his constitutional rights. *See Seymour*, 224 F.3d at 557. Petitioner, therefore, is not entitled to relief on habeas ground III.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full

merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated:   <u>January 3, 2023</u>            <u>/s/ Jane M. Beckering</u>
                                        Jane M. Beckering
                                        United States District Judge